The PEOPLE of the State of Colorado Through the DENVER DEPARTMENT OF SOCIAL SERVICES, In the Interest of R.D.H. and P.H., Children, Upon the Petition of the Denver County Department of Social Services, Petitioner–Appellee,

and Concerning K.L.H., Respondent–Appellant.

No. 96CA0106.

Colorado Court of Appeals, Div. II.

May 29, 1997.

Rehearing Denied June 26, 1997.

Certiorari Denied Oct. 20, 1997.

Daniel E. Muse, City Attorney, Elizabeth Adams, Assistant City Attorney, Denver, for Petitioner–Appellee.

Allen B. Alderman, Guardian Ad Litem, for R.D.H. and P.H.

Cynthia M. Mardian, Denver, for Respondent–Appellant.

Opinion by Judge PLANK.

In this parental rights termination case, K.L.H. (mother) appeals the judgment terminating the legal parent-child relationship between her and her children, R.D.H. and P.H. Mother claims that the trial court erred in allowing the testimony of two substance abuse counselors and in admitting certain exhibits. We affirm.

After mother abandoned her newborn son and there were indications she was using crack cocaine and was homeless, the Denver Department of Social Services (DDSS) filed a petition in dependency and neglect. Mother subsequently underwent a drug evaluation in which she indicated that she had been using crack cocaine for several years and had experienced increased tolerance, withdrawal symptoms, and financial problems. The evaluation recommended several months of drug therapy which mother started but did not complete.

Upon mother's admission, the children were adjudicated dependent and neglected and a treatment plan was adopted. The treatment plan required mother to receive a drug evaluation and treatment, obtain housing and submit a financial budget, complete parenting classes, insure that the children received medical care, cooperate with paternity testing for P.H., and cooperate with the DDSS.

Mother did not take advantage of DDSS referrals to several substance abuse treatment facilities that would have allowed her to have her children with her. She entered a detoxification program at Arapahoe House but left before her treatment was completed to enter the Brandon House shelter. She was admitted to outpatient group counseling at one facility but was discharged because she failed to attend the program in any meaningful manner. Mother completed a 21–day residential treatment program at Arapahoe House but failed to participate in outpatient aftercare or submit to urine analysis. Based on mother's continued substance abuse problems, DDSS filed motions to terminate her parental rights.

At the termination hearing, a counselor from Arapahoe House testified and asserted that information sought in this case was confidential pursuant to federal regulations prohibiting federally funded substance abuse treatment facilities from releasing patients' treatment records. Upon the objection of mother's counsel to that counselor's testimony, the trial court ruled that, although the federal confidentiality statute, 42 U.S.C. § 290dd–2 (1994), is controlling, the disclosure of the information was appropriate because the court-ordered treatment plan required mother to participate in substance abuse treatment and the testimony was relevant to the issues before the court.

The counselor who asserted confidentiality then testified regarding the chronology of mother's substance abuse treatment and mother's admission to a two-year problem with cocaine, and gave her opinion that without continued treatment mother's substance

abuse problem would continue. Mother asserts that the trial court erred in allowing this testimony.

## I.

The federal confidentiality statute, 42 U.S.C. § 290dd–2(1994), provides that, absent patient consent, records of the identity, diagnosis, prognosis, or treatment of any patient which are maintained in connection with the performance of any program or activity relating to substance abuse education, prevention, training, treatment, rehabilitation, or research, which is conducted, regulated, or directly or indirectly assisted by any department or agency of the United States, shall be confidential and disclosed only under certain circumstances. The statute further provides that, regardless of whether the patient has consented, the content of the records described above may be disclosed, as relevant here, if authorized by an appropriate court order after a showing of good cause. 42 U.S.C. § 290dd–2(b)(2)(C) (1994).

Comprehensive regulations codified at 42 C.F.R. §§ 2.61 to 2.67 provide procedures that must be followed for a court-ordered disclosure of patient records. In civil litigation, where it appears that the records are needed as evidence, the regulations require the filing of an application for a court order, notice to the patient and the person holding the records, and, if required, an *in camera* hearing. 42 C.F.R. § 2.64(a to c). The order authorizing disclosure of the records must contain certain safeguards limiting the disclosure. 42 C.F.R. § 2.64(e).

Mother claims that the court did not comply with these regulations in ordering the Arapahoe House counselor to testify. However, these regulations refer only to the disclosure of patient records. *See In re B.S.*, 163 Vt. 445, 659 A.2d 1137 (1995).

Here, even though the counselor relied on mother's treatment records in testifying as to the dates of treatment and in forming opinions as to mother's substance abuse problems, there is nothing in the record to indicate that Arapahoe House disclosed mother's treatment records. Therefore, mother's claim is necessarily limited to confidential information disclosed in the counselor's testimony.

The counselor's testimony falls under 42 C.F.R. § 2.63, which governs the disclosure of confidential communications. *See Carr v. Allegheny Health, Education & Research Foundation,* 933 F.Supp. 485 (W.D.Pa.1996)(federal confidentiality statute and regulations apply to testimony that may be given at oral deposition); *In re B.S., supra* (42 C.F.R. § 2.63(a) applies to testimony of alcohol abuse counselor at parental rights termination).

This regulation provides that a court order may authorize disclosure of confidential communications made by a patient to a program in the course of diagnosis, treatment, or referral for treatment only under three conditions: (1) the disclosure is necessary to protect against an existing threat to life or of serious bodily injury, including circumstances which constitute suspected child abuse and neglect and verbal threats against third parties; (2) the disclosure is necessary in connection with investigation or prosecution of an extremely serious crime, such as one which directly threatens loss of life or serious bodily injury, including homicide, rape, kidnapping, armed robbery, assault with a deadly weapon, or child abuse and neglect; or (3) the disclosure is in connection with litigation or an administrative proceeding in which the patient offers testimony or other evidence pertaining to the content of the confidential communication.

By its terms, 42 C.F.R. § 2.63(a) protects only confidential information given by the patient to the treatment provider and only for diagnosis, treatment, or referral. *Carr v. Allegheny Health, Education & Research Foundation, supra.* Therefore, only those parts of the counselor's testimony that disclosed confidential information provided by mother to the program are protected against disclosure.

■ Our review of the counselor's testimony indicates that the counselor testified in large part to the general procedures that Arapahoe House uses to treat patients for substance abuse. Objective factual information such as this does not fall under the protections of 42 C.F.R. § 2.63(a). *See*

*Smalls v. Fallon,* (S.D.N.Y.1995) (1995 WL 5847) (only confidential communications are protected from disclosure, not underlying facts).

■ The only information given by mother to Arapahoe House that may be a protected confidential communication was mother's report of her history of drug and alcohol use. However, because this information was already before the court, it was cumulative, and any error in its admission was thus harmless. *See Hansen v. Lederman,* 759 P.2d 810 (Colo.App.1988) (any error in admission of questioned evidence is harmless if other proper evidence to the same effect has been admitted).

## II.

■ Mother also claims that the testimony of a licensed social worker, who testified concerning mother's history of substance abuse and her participation in treatment, and gave her opinion that mother had not successfully completed the treatment program, was privileged under § 13–90–107(1)(g), C.R.S. (1996 Cum.Supp.). The trial court allowed the testimony on the basis that the communications were made pursuant to mother's substance abuse treatment in response to the court-ordered treatment plan. We conclude that any error in allowing the social worker to testify was harmless.

■ Section 13–90–107(1)(g) prohibits a licensed psychologist, professional counselor, marriage and family therapist, or social worker from testifying as to any communication made by a client without the client's consent. The communications protected under this privilege are limited to information the patient discloses to a mental health therapist that is necessary for the therapist to prescribe or act for the patient. *B.B. v. People,* 785 P.2d 132 (Colo.1990) (psychologist-patient privilege identical to physician-patient privilege and extends only to information patient discloses for purpose of treatment).

Here, information concerning mother's history of drug use was before the court prior to the testimony of the licensed social worker. Therefore, the testimony of the licensed so-

cial worker as to mother's history of drug use was cumulative and any error was harmless. *Hansen v. Lederman, supra.*

## III.

Mother next contends that the trial court erred in allowing into evidence certain reports that allegedly contained hearsay. We disagree.

The Children's Code, § 19–1–107, C.R.S. (1996 Cum.Supp.), requires that the agency designated by the court make a social study and report in writing in all cases brought under the Children's Code. For the purpose of determining the proper disposition of a child, written reports and other material relating to the child's mental, physical, and social history may be received and considered by the court along with other evidence. Section 19–1–107(2), C.R.S. (1996 Cum. Supp.).

■ Dispositional and evaluative reports that fall within § 19–1–107 may be admitted, into evidence if the reports are furnished to counsel in advance of the termination hearing, and the authors of the reports or those preparing the materials contained in the report are available for direct or cross-examination upon the request of the respondent or any other interested party. *People in Interest of A.M.D.,* 648 P.2d 625 (Colo.1982). There is no prohibition against using such reports for determining facts at a termination hearing. *People in Interest of J.E.B.,* 854 P.2d 1372 (Colo.App.1993).

■ Further, hearsay objections to dispositional and evaluative reports whose admission is authorized by § 19–1–107 go to the weight and probative value of the reports rather than to their admissibility. *People in Interest of A.R.S.,* 31 Colo.App. 268, 502 P.2d 92 (1972).

### A.

■ Mother contends that the termination report was inadmissible under § 19–1–107 because it contained extensive information about her and therefore was not a report on the child's mental, physical, and social history. However, our review of the termination report indicates that it is of the type contem-

plated as admissible under § 19–1–107. Furthermore, the author of the report testified at the termination hearing, and mother does not allege that she was not provided with a copy of the report in advance or that she could not cross-examine the author of the report. Therefore, we find no error in admitting the termination report into evidence.

### B.

■ Mother asserts that the admission of an evaluative report concerning the health and development of the child, R.H., was error because it contained hearsay. We find no error because our review of the record indicates that the report clearly falls under § 19–1–107, and that the author of the report testified at the termination hearing and was subject to cross-examination.

### C.

Mother's final assertion of error goes to the admission of the records of the Brandon House shelter under the business records hearsay exception of CRE 803(6). Mother argues that the Brandon House records do not qualify as business records because they contain hearsay statements of other Brandon House residents and a DDSS case worker that lack the requisite guaranty of trustworthiness. We disagree.

The business records exception allows the admission of reports, records, or data compilations of acts, events, conditions, opinions, or diagnosis, made at or near the time by, or from information transmitted by, a person with knowledge if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the reports, records, or data compilations, all as shown by the testimony of the custodian. The term "business" as used in the rule includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit. CRE 803(6).

■ Statements by an outside party included within a business record are not necessarily granted the presumption of accuracy that attaches to statements made in the regular course of business because the outside party does not have a business duty to report the information. However, records containing such information are admissible when, as here, the information is provided as part of a business relationship between a business and an outsider and there is evidence that the business substantially relied upon the information contained in the records. *See Schmutz v. Bolles,* 800 P.2d 1307 (Colo.1990).

■ The determination of the sufficiency of a foundation for the admission of evidence is a matter within the sound discretion of the trial court, and its ruling may not be disturbed upon review absent a clear abuse of discretion. *Hauser v. Rose Health Care Systems,* 857 P.2d 524 (Colo.App.1993).

■ Here, after hearing the parties' arguments, the trial court determined that the Brandon House records met the test of admissibility under CRE 803(6) and *Schmutz.* The court concluded that Brandon House relied upon the statements of residents concerning the conduct of other residents in making decisions relevant to the business of providing shelter to women and children. Mother presents no legal arguments disputing the court's ruling, and, in any event, we perceive no abuse of discretion in the trial court's ruling.

The judgment is affirmed.

CRISWELL and KAPELKE, JJ., concur.